UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| United States of America,<br><br>           Plaintiff<br><br>  v.<br><br>William Alvear, M.D.,<br><br>           Defendant | Case No. 2:20-cr-00229-CDS-VCF<br><br>**Order Addressing Motions in Limine**<br><br>[ECF Nos. 101, 103, 109, 138] |

      Defendant William Alvear, M.D., is charged with 42 counts of distributing a controlled substance in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C) and one count of maintaining a drug-involved premises in violation of 21 U.S.C. § 856.[1] In anticipation of trial, the parties have filed several motions in limine. This order resolves some of those pending motions.

**I.    Background**

      The government alleges that between March and May of 2020, two confidential human sources received controlled substances from Alvear. *See generally* Superseding Indictment, ECF No. 59. Based on those transactions, Alvear was indicted and charged with eight counts of violating 21 U.S.C. § 841(a)(1) & (b)(1)(C). *Id.* at ¶ 10–13. The government also alleges that between June 2017 and May 2020, Alvear knowingly maintained a drug-involved premises for the purpose of distributing controlled substances and charged him with one count of violating 21 U.S.C. § 856. *Id.* at ¶ 16–17. Alvear pleads not guilty to each count. ECF No. 67. Trial is set to commence on May 1, 2023.

---

[1] The government has filed a motion to dismiss counts nine through forty-two of the superseding indictment. ECF No. 123. The court will address this motion at calendar call on April 25, 2023.

## II. Legal standards

### a. Relevant evidence

Relevant evidence is generally admissible. Fed. R. Evid. 402. It may be excluded, however, "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### b. Admission of expert evidence

The admission of expert evidence is governed by Federal Rule of Evidence 702, which codified the Supreme Court's decision in *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993), and its progeny. The rule states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The trial court must first assess whether the testimony is valid and whether the reasoning or methodology can properly be applied to the facts in issue. *Daubert*, 509 U.S. at 592–93. Factors to consider in this assessment include whether the methodology can be tested, whether the methodology has been subjected to peer review, whether the methodology has a known or potential rate of error, and whether the methodology has been generally accepted within the relevant professional community. *Id.* at 593–94. "The inquiry envisioned by Rule 702" is "a flexible one." *Id.* at 594. "The focus . . . must be solely on principles and methodology, not on the conclusions that they generate." *Id.*

The *Daubert* analysis is applicable to testimony concerning non-scientific areas of specialized knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). However, application of the *Daubert* factors may not apply to testimony that is drawn from the knowledge and experience of the proposed expert, rather than a particular methodology. *See United States v.*

*Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000) (citation omitted) (finding that *Daubert* factors do not apply to police officer's testimony based on 21 years of experience working undercover with gangs). Thus, an expert that is qualified by experience may testify in the form of opinion if his or her experiential knowledge will help the trier of fact to understand evidence or determine a fact in issue, as long as the testimony is based on sufficient data, is the product of reliable principles, and the expert has reliably applied the principles to the facts of the case. *See* Fed. R. Evid. 702; *Daubert*, 509 U.S. at 579. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 595 (citation omitted).

### III.   Motions in Limine

    *a.   The government's motion in limine to exclude the testimony of former Detective Tim Beck (ECF No. 101) is granted in part and denied in part.*

The government moves to exclude the testimony of retired Las Vegas Metropolitan Police Department (LVMPD) Detective Tim Beck, arguing that he is not qualified to provide the opinions set forth in his notice of expert testimony (ECF No. 99), and arguing that his notice fails to comply with Rule 16. *See generally* ECF No. 101. Alvear opposes the motion, arguing that Detective Beck has nearly 30 years of law enforcement experience and that he has specialized knowledge regarding narcotics investigations, to include "pill mills." ECF No. 134 at 2. Beck's notice of expert testimony provides he will opine on the following:

> (1) "the proper way to conduct undercover operations in order to avoid issues of entrapment, involving confidential informants and the proper way to handle and instruct confidential information to prevent them from using sex, or the express or implied promise thereof during an operation"; and
>
> (2) "proper way to investigate money, trace the money to illegal activities,"; and
>
> (3) "the investigation in this case was not done properly."

ECF No. 99 at 2. The notice states his opinion is based upon review of the government's discovery, which includes undercover videos and an audio recording of the interview with Dr. Alvear. *Id.*

I find that Detective Beck is qualified to testify regarding undercover narcotic investigations and investigations regarding "pill mills." Part of my determination is based on Alvear's response to the government's motion, which contained significantly more information than Beck's notice of expert testimony and CV combined. I find that Beck is qualified because for 20 of his 25 years in law enforcement, he was assigned to the major violator/narcotics crime unit. ECF No. 99-1 at 1–2. His experience includes street narcotic sales as well as investigation into diversion and the unlawful distribution of opioids. *Id.* He is also qualified to provide testimony regarding physical and wire surveillance, wire taps, and money laundering because he was personally involved in numerous street level and large-scale drug investigations. *Id.* at 2–3. He also was involved in investigations regarding the unlawful distribution of opioids in the Las Vegas Valley. *Id.* His CV also reveals he has attended numerous continuing education programs regarding narcotics investigations, several of which include training on opioids. *Id.* at 5–7.

I find that Beck's proposed testimony is also relevant. His testimony regarding undercover investigations would provide the jury with evidence regarding a specialized subject matter: the utilization of undercover informants in opioid investigations. And, assuming that Alvear raises an entrapment defense, the noticed subject matter will help the trier of fact to understand evidence or determine a fact in issue. Accordingly, Beck will be permitted to testify on some of the subjects specifically stated in his notice of expert testimony.

However, I agree in part with the government in that Beck's notice of expert testimony was insufficient. It lacks explanation of what constitutes a "red flag" in an undercover investigation, whether they were present in the instant case, what the "proper" undercover techniques would be, how they were not conducted in this case, and an explanation as to what "pill mills" are. While the expert notice may be insufficient, I decline to exclude his testimony at this time. Alvear has until 5:00 p.m. on Wednesday, April 26, 2023, to disclose this information to the government. Until then, the government's motion in limine to exclude Beck's testimony is denied without prejudice.

Finally, Beck's notice is wholly lacking in describing his opinions regarding fiscal transactions for this case. Alvear is not charged with money laundering or any other financial crime, thus it is unclear how testimony regarding the "proper way to investigate money" or to "trace the money to illegal activities" would be relevant. Accordingly, I defer ruling on whether or not Beck may testify on this subject matter.

    b.   *The government's omnibus motion in limine (ECF No. 103) is granted in part and denied in part.*

The government's omnibus motion in limine seeks to preclude: (1) defense witness Dr. Odell from opining about medical records from Alvear's practice that are dated after September 5, 2020[2]; (2) to limit the scope of cross-examination of confidential human sources; and (3) to prevent Alvear from alleging an entrapment defense.

    1.   *Testimony regarding medical records concerning treatment after September 5, 2020, is irrelevant, but the relevance of other records is unclear at this time.*

The government seeks to exclude defense expert Dr. Robert Odell from opining on Alvear's patients' records after September 5, 2020, arguing that "Dr. Odell's opinion drew on patient records and reports that were generated after Alvear was indicted and after Alvear was ordered not to prescribe any controlled substances. Alvear's treatment of patients consistent within the standards of ordinary practice after he has been charged with prescribing controlled substances outside those standards has no bearing on his state of mind for the conduct charged." ECF No. 103 at 4. Alvear agrees not to have Dr. Odell testify regarding any medical records involving prescription (or non-prescription) of drugs after Alvear's arrest on September 3, 2020. ECF No. 131 at 7. He also agrees that he will not seek to admit any medical records regarding the same. *Id.* However, Alvear notes that some of the records, even if produced after the date of Alvear's arrest, concern medical treatment provided *prior to* Alvear's arrest. *Id.* at 1–2.

---

[2] The government's motion lists September 5, 2020, as the cut-off date for relevant testimony in its header, ECF No. 103 at 4, but lists September 8 in the body of the text. *Id.* at 4–5. Alvear was originally indicted on September 2, 2020, ECF No. 1, and made his initial appearance and plea of not guilty on September 8, 2020. ECF No. 6. Because I find that Alvear's treatment of patients after he was charged has no bearing on his state of mind for the charged conduct, I find that Dr. Odell may not testify about Alvear's treatment of patients after September 5, 2020.

The government's motion to exclude Dr. Odell from testifying regarding what Alvear did after September 5, 2020, is GRANTED. But the court defers ruling on whether the PMP data dating back approximately two years before the indictment was issued is admissible because the specific timeframe and scope of PMP data Alvear seeks to introduce is not yet clear.

    2. *The parties are expected to follow the rules of evidence in conducting examinations of witnesses.*

The government seeks to preclude Alvear from "presenting evidence, making argument, or engaging in cross-examination of the CHSs [Confidential Human Sources] (or introduce extrinsic evidence) about (1) criminal convictions more than 10 years old, (2) alleged acts which did not result in conviction nor are relevant to truthfulness, and (3) details of investigations involving the CHSs' cooperation unrelated to the investigation of the defendant." ECF No. 103 at 5. Alvear did not respond to any specific argument advanced by the government on this point, but instead generally contends that "matters that reflect on motive, bias[,] and perception are certainly relevant" and that "the court should not preclude questions based on concerns for relevancy without any specifics." ECF No. 131 at 15. I fully expect the defense to follow the Federal Rules of Evidence and all applicable law in conducting examination of witnesses and in making arguments before the jury. Without greater context regarding the scope of the CHSs' testimony, I cannot determine the appropriate scope of cross-examination at this time. The court thus defers ruling on the government's motion to preclude the defense from engaging in the conduct specified above.

    3. *There is insufficient information before the court to preclude Alvear from raising entrapment as a defense at this time.*

The government seeks to preclude Alvear from asserting a defense of entrapment, arguing that "Alvear cannot show government inducement or a lack of predisposition, and thus should be precluded from making any such argument or suggestion—express or implied— that Alvear was entrapped by law enforcement." ECF No. 103 at 10. Alvear responds that he is willing to provide

an *ex parte* proffer regarding its defense of entrapment during calendar call on April 25, 2023. ECF No. 131 at 8.

Only slight evidence raising the issue of entrapment is necessary for submission of the issue to the jury. *United States v. Gurolla*, 333 F.3d 944, 951 (9th Cir. 2003). And a defendant need not concede that he committed the crime to be entitled to an entrapment instruction. *United States v. Derma*, 523 F.2d 981, 982 (9th Cir. 1975). Thus, should Alvear show slight evidence raising the issue of entrapment, the court will not rule on whether or not he is entitled to a jury instruction on entrapment until trial.[3] Should Alvear present or argue an entrapment defense, which it appears he intends to do, the government will be permitted to present rebuttal evidence – either in its case-in-chief or in rebuttal. *See United States v. Gomez*, 6 F.4th 992 (9th Cir. 2021).[4] The government's motion in limine to preclude presentation of an entrapment defense is DENIED without prejudice.

    c. *The government's motion in limine to exclude testimony regarding dosage levels (ECF No. 138) is granted.*

The government moves to preclude defense expert witness testimony from Kimberly Hoffman, PharmD, APh, BCPP, BCGP, from providing opinion testimony that Dr. Alvear's patients received "very low doses of opioids," and further that the defendant's prescribing practices "would not be cause for concern for a pharmacist dispensing [those] medications." ECF No. 138 (citing the notice of Hoffman's expert testimony, ECF No. 114-2).

Title 21 U.S.C. § 841(a)(1) makes it a federal crime, "[e]xcept as authorized . . . for any person knowingly or intentionally . . . to manufacture, distribute, or dispense . . . a controlled substance." Under applicable regulations, a prescription is "authorized" when a licensed practitioner issues it "for a legitimate medical purpose . . . acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a). The Supreme Court of the United States recently

---

[3] Because the defendant need not offer any pre-trial notice of an entrapment defense, the court does not require the defendant to proffer any evidence of entrapment.
[4] There is insufficient evidence before the court to determine whether Alvear's prior conviction can be admitted as part of any entrapment rebuttal. I therefore defer ruling on this issue as well.

7

clarified that "[a]fter a defendant produces evidence that he or she was authorized to dispense controlled substances, the Government must prove beyond a reasonable doubt that the defendant knew that he or she was acting in an unauthorized manner, or intended to do so." *Ruan v. United States*, 142 S. Ct. 2370, 2375 (2022). Therefore, in order to determine whether Alvear is guilty or not guilty, the jury must focus on Alvear's mental state at the time he prescribed the relevant controlled substances charged in the superseding indictment, rather than the mental state of a pharmacist who believes Alvear was prescribing in low doses or was prescribing in doses that would not be cause for concern. Accordingly, the government's motion in limine to exclude Hoffman's testimony regarding low dosage levels and her lack of concern regarding those levels is GRANTED.

        d.   *The defense's omnibus motion in limine (ECF No. 109) is granted in part and denied in part.*

Alvear moves to (1) exclude testimony regarding the Nevada State Medical Board placing Alvear on probation following his prior felony conviction, (2) preclude testimony and evidence regarding allegations of sexual abuse or sexual contact between Alvear and patients, and (3) preclude testimony and references to the opioid crisis generally in the United States. *See generally* ECF No. 109.

        1.   *Alvear's medical board probationary period is irrelevant unless he opens the door.*

Alvear was previously convicted of felony soliciting and receiving renumeration for accepting bribes from a home healthcare company for patient referrals, in violation of 42 U.S.C. §1320a-7b(1). ECF No. 109 at 2. As a result of the conviction, the Nevada State Board of Medical Examiners filed a disciplinary complaint. *Id.* Alvear settled the complaint by agreement, Ex. A, ECF No. 109-1, wherein he agreed to a 36-month probationary period against his medical license. ECF No. 109 at 2–3. He argues that this disciplinary action is irrelevant to the conduct at issue in the instant matter, because "[t]he prior conviction does not involve medical prescribing issues but rather involved accepting money for referrals to home health care" and that Alvear's "ability to prescribe medications and practice medicine was not limited" by the settlement agreement. *Id.*

at 3. The government argues that such a conviction is relevant if Alvear raises an entrapment defense, as "it demonstrates that Alvear is willing to make medical decisions and referrals for his patients for purposes other than medical need or necessity." ECF No. 141 at 2–3.

Evidence of predisposition to commit a crime and proof of prior convictions may be introduced to rebut an affirmative defense of entrapment. *Gomez*, 6 F.4th at 1002. An element of an entrapment defense is the "absence of predisposition on the part of the defendant to engage in the criminal conduct." *United States v. Gurolla*, 333 F.3d 944, 951 (9th Cir. 2003). When a defendant raises an entrapment defense, "character, reputation, and lack of reluctance constitute 'essential elements' of the entrapment defense." *Gomez*, 6 F.4th at 1004. Because character evidence "is both admissible and an essential element of an entrapment defense, it may be proved under Rule 405 of the Federal Rules of Evidence by reputation or opinion testimony, as well as by specific instances of conduct." *Id.* The government may meet its burden of proof "through inquiry into the defendant's record of conduct and reputation that he was predisposed to commit the crime[.]" *Id.* (quoting *Pulido v. United States*, 425 F.2d 1391, 1393 (9th Cir. 1970)).

Nevertheless, the Ninth Circuit has held that "evidence of prior bad acts is not relevant to prove predisposition unless the prior bad acts are similar to the charged crime." *United States v. Mendoza-Prado*, 314 F.3d 1099, 1103 (9th Cir. 2002) (citing *United States v. Bramble*, 641 F.2d 681, 682 (9th Cir. 1981)). That is so because "no probative purpose is served unless a rational inference can be drawn from the prior act . . . that one induced to perform [the charged crime] was predisposed to do so." *Id.* (quoting *Bramble*, 641 F.2d at 683 n.2).

I find that Alvear's conviction for accepting bribes for patient referrals is insufficiently related to the charged conduct in this case. There is no rational inference that can be drawn from the prior conviction to proscribing controlled substances without medical necessity. The kickback scheme alleges that Alvear funneled patients to a service they would have otherwise received from a different provider—that is, the prior conviction did not indicate that Alvear was necessarily harming his patients. The charged conduct in this case, on the other hand, directly

implies that Alvear was harming his patients' health (by prescribing controlled substances without medical necessity) in pursuit of some ulterior motive. While the government asserts that Alvear's prior conviction demonstrates that he is willing to make medical decisions for purposes other than medical need, the underlying conduct is too dissimilar to draw any parallels that suggest Alvear was predisposed to prescribe controlled substances. I thus grant Alvear's motion to exclude testimony regarding the probationary period on his medical license resulting from his prior conviction. However, the government may raise this motion at trial should it feel Alvear has opened the door.

          2. *The court defers ruling on the admissibility of allegations regarding sexual contact between Alvear and his patients.*

Alvear is "concerned [that the government] may attempt to play the audio recording of his FBI interrogation at the trial or read from the [t]ranscript." ECF No. 109 at 5. The interrogation concerns Alvear's sexual contact with his female patients. *Id.* Alvear also does not want the contact referred to by "loaded terms [such] as sexual assault or sexual abuse." *Id.* He argues that, because this is not a sex-crime case and Alvear is not charged with any such crimes, the audio recording of his interrogation is prohibited evidence of uncharged conduct and also unfairly prejudicial. *Id.* The government responds that it is likely uninterested in introducing portions of the interrogation, but that it does "intend to elicit testimony from witnesses and introduce evidence that depict how Alvear groped, solicited, sexually assaulted[,] and abused his patients." ECF No. 141 at 3. It asserts that Alvear's sexual attraction to his patients and the resulting sexual contact demonstrate that Alvear was not distributing controlled substances for a legitimate medical purpose. *Id.* It adds that such evidence is inextricably intertwined with the charged conduct as the evidence "constitutes a part of the transaction that serves as the basis for the criminal charge" and is necessary "to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *Id.* at 4 (quoting *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012–13 (9th Cir. 1995)).

The government has provided a video recording that suggests that Alvear engaged in a quid pro quo with a CHS wherein Alvear made repeated sexual advances toward the CHS just before and after handing them a Xanax pill. *See generally* Ex. 1, ECF No. 141. It adds that one of Alvear's former patients is expected to testify that she tolerated Alvear's unwanted sexual contact because he provided her with controlled substances. ECF No. 141 at 6. However, because the nature of the testimony sought to be excluded is unclear without greater context and factual specificity, the court declines to rule on the admissibility of this testimony at this time. Should the government seek to introduce this evidence at trial, they should advise the court and defense prior to the witness's testimony. Further, should I decide some or part of the evidence will be admitted, the parties should be prepared to offer the court a proposed limiting instruction for the jury.

> 3. *The court defers ruling on the admissibility of testimony referencing an opioid crisis in the United States.*

Alvear requests that the government be precluded from eliciting testimony or referring in argument to the alleged opioid epidemic in the United States, or that Alvear's alleged conduct contributed to the epidemic. ECF No. 109 at 7. The government responds that the context of the opioid crisis generally informs the standard of care to be used by physicians when prescribing opioids and that the government's expert may indicate that certain standards of care exist as a result thereof. ECF No. 141 at 9. It states that it will not argue that Alvear is responsible for or contributing to the opioid crisis, but rather, that it will use the opioid crisis as background to provide context for the usual course of medical practice and to demonstrate Alvear's state of mind while "cautiously tailoring his prescription practices to avoid raising red flags." *Id.*

The Ninth Circuit itself has considered the "epic crisis of deadly opioid abuse and overuse" in determining the validity of a healthcare provider's sentence for conspiracy to distribute controlled substances. *See United States v. Garrison*, 888 F.3d 1057, 1059–60 (9th Cir. 2018) (describing opioid abuse statistics and stating that "[i]n the midst of this crisis, we trust

doctors and healthcare professionals to be conscientious gatekeepers to these dangerous and potentially fatal drugs."). To the extent that the government might imply a specific connection between the defendant and any opioid epidemic generally, I permit the defense to raise objection at that time. But general references to the opioid epidemic to provide context for Alvear's actions are permissible. I thus deny Alvear's motion in limine to exclude any reference to the opioid epidemic without prejudice.

### IV. Conclusion

IT IS HEREBY ORDERED that the government's motion to exclude Timothy Beck [ECF No. 101] is GRANTED in part and DENIED in part pursuant to the instructions in this order.

IT IS FURTHER ORDERED that the government's omnibus motion in limine [ECF No. 103] is GRANTED in part and DENIED in part pursuant to the instructions in this order.

IT IS FURTHER ORDERED that the defense's omnibus motion in limine [ECF No. 109] is GRANTED in part and DENIED in part pursuant to the instructions in this order.

IT IS FURTHER ORDERED that the government's motion to exclude testimony regarding dosage levels [ECF No. 138] is GRANTED.

DATED: April 24, 2023

_____
Cristina D. Silva
United States District Judge